**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0334n.06**

**No. 12-6001**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED**<br>Apr 28, 2014<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| TIMOTHY CHATMON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BOGGS, NORRIS, and WHITE, Circuit Judges.

BOGGS, Circuit Judge. In this case, we interpret the term "prior felony convictions" as used for career-offender purposes in Chapter 4 of the United States Sentencing Commission's Guidelines Manual. Timothy Chatmon pleaded guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1). The district court sentenced Chatmon as a career offender, under § 4B1.1 of the Guidelines Manual, to 188 months of imprisonment. Chatmon argues that: 1) his past convictions do not qualify him as a career offender; and 2) his sentence was substantively unreasonable. Because the district court incorrectly counted one of Chatmon's prior convictions as a "sentence of imprisonment" for career-offender purposes without determining that Chatmon actually served a period of imprisonment on such sentence, we vacate the district court's sentence and remand for resentencing.

1

In March 2012, Timothy Chatmon pleaded guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1). His presentence report determined that his crime involved 129.8 grams of cocaine hyrdrochloride. Because this quantity is "[a]t least 100 G but less than 200 G," it corresponds to a base offense level of 18. *See* U.S.S.G. § 2D1.1(c)(11). After a three-level reduction for acceptance of responsibility under § 3E1.1, Chatmon's offense level would have been 15.

The presentence report, however, determined that because Chatmon had two prior felony controlled-substance convictions, he qualified as a career offender under § 4B1.1(a). Jackson's offense carries a statutory maximum penalty of 20 years of imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). Under the career-offender table, this statutory-maximum penalty corresponds to an offense level of 32. *See* § 4B1.1(b)(3). Because Chatmon's "offense level for a career offender from the table"—i.e., 32—was greater than "the offense level otherwise applicable"—i.e., 15—the career-offender offense level applied. § 4B1.1(b). Chatmon's applicable offense level, therefore, was 32. His criminal-history category under the table was automatically VI.[1] The career-offender table permits a reduction of up to three levels for acceptance of responsibility under § 3E1.1. *See ibid.* The presentence report recommended this reduction, so Chatmon's final offense level, under the career-offender table, was 29. An offense level of 29 and a criminal-history category of VI resulted in a § 5A sentence range of 151–188 months for Chatmon.

Chatmon was previously convicted of robbery in Georgia and twice convicted of cocaine possession in Tennessee. At sentencing, Chatmon objected to the presentence report's

---

[1] A defendant sentenced as a career offender always receives a criminal-history category of VI. § 4B1.1(b).

determination that his criminal history qualified him as a career offender, arguing that his Georgia robbery conviction did not qualify as a "sentence of imprisonment" and also that his two Tennessee convictions should count as a single sentence. Chatmon also moved for a downward variance from the presentence report's recommended guideline range. The district court overruled Chatmon's objection and denied the motion. The district court sentenced Chatmon to 188 months of imprisonment. Neither party raised any additional objections.

On appeal, Chatmon argues that he does not meet the criteria to qualify as a career offender under § 4B1.1. Specifically, Chatmon contends that the district court incorrectly based Chatmon's career-offender status on an offense for which no term of imprisonment was actually served. Chatmon also argues that his sentence was substantively unreasonable because the district court gave undue weight to Chatmon's criminal history.

## II

We review de novo a district court's legal conclusions underlying its § 5A sentencing range, and we review for clear error the sentencing court's factual findings. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). We review de novo a district court's determination that a defendant qualifies as a career offender. *Mallett v. United States*, 334 F.3d 491, 500 (6th Cir. 2003). Questions involving the interpretation of the Guidelines Manual are legal questions that this court reviews de novo. *United States v. Hall*, 531 F.3d 414, 416 (6th Cir. 2008).

## III

### A. Career-Offender Qualification

Ordinarily, the Guidelines Manual establishes a base-offense level for defendants convicted of drug offenses based on a drug-quantity table, under which a higher quantity of drugs corresponds to a higher offense level. *See* § 2D1.1(c). The Manual, however, provides an

3

alternate method of establishing a base offense level for a defendant who meets certain criteria and qualifies as a career offender. *See* § 4B1.1. Defendants deemed career offenders receive a base offense level that corresponds to the statutory maximum penalty. *Ibid.* If that offense level "is greater than the offense level otherwise applicable," the career-offender offense level "shall apply." § 4B1.1(b). To qualify as a career offender, a defendant must meet three criteria: 1) the defendant must be at least 18 at the time of the instant offense; 2) the instant conviction must be a felony either for a crime of violence or a controlled-substance offense; and 3) the defendant must have at least two prior felony convictions for either a crime of violence or a controlled substance offense. § 4B1.1(a).

At issue in this case is the third condition—whether Chatmon has two prior felony convictions that count as predicate offenses. Chatmon's presentence report lists fifteen prior criminal convictions, three of which served as predicate offenses for career-offender purposes. In 1999, Chatmon was convicted in Georgia state court of robbery, aggravated assault, possession of a firearm during commission of a crime, and possession of a firearm by a convicted felon. In 2003, Chatmon was twice convicted in Tennessee state court of cocaine possession.

Chatmon argues that the Georgia conviction cannot count as a predicate offense because he never served a term of imprisonment for it. He also argues that the two Tennessee convictions count as one predicate offense under the Guidelines. Thus, Chatmon concedes that he has at least one predicate offense for career-offender purposes. At issue is whether he has a second.

At sentencing, the district court denied Chatmon's objection to counting the Georgia conviction because the court did not believe that a defendant need serve time for the conviction

4

to count for career-offender purposes. The district court then deemed moot Chatmon's objection to counting the two Tennessee convictions separately because it already determined that Chatmon had the two necessary predicates for career-offender purposes.

This case requires us to interpret the term "prior felony conviction," as used in § 4B1.1 of the Guideline Manual. The issue is important because were Chatmon not sentenced as a career offender, his § 5A sentence range would have been 30–37 months—well under the 188-month sentence that Chatmon received. As the district court told Chatmon, "[Y]ou come into court with an awful lot of baggage. And it is that baggage that really drives your sentence today." As in other cases interpreting the Guidelines, this case requires us to navigate the Manual's structure with a close and careful reading of its language.

### 1. The 1999 Georgia Conviction

As noted, to qualify as a career offender, a defendant must, inter alia, have "two prior felony convictions" for either a crime of violence or a controlled-substance offense. § 4B1.1(a). Section 4B1.1 does not define the term, but the application notes refer the reader to § 4B1.2 for a definition. *See* § 4B1.1 cmt. n.1. Section 4B1.2(c), in turn, defines "two prior felony convictions" this way:

> The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

The definition is somewhat problematic. It provides that the predicate offenses must be "counted separately under the provisions of § 4A1.1(a), (b), or (c)," § 4B1.2(c), but it does not specify

which prior convictions should count. Section 4B1.2(c)'s own application notes provide that "[t]he provisions of § 4A1.2 . . . are applicable to the counting of convictions under § 4B1.1." § 4B1.2 cmt. n.3.

Under the Manual, a defendant's § 5A sentence range is a result of not just an offense level but also a criminal-history category, as determined by Part A of Chapter 4. *See* § 1B1.1(a)(6). The language from Part B, quoted above, indicates that a sentence that counts separately for purposes of determining a defendant's criminal-history category also counts separately for career-offender purposes. This makes sense. Essentially, the definitions and sentence-counting methods of Part A also apply to Part B for career-offender purposes.

Section 4A1.1 assigns a defendant criminal-history points based on the nature of a defendant's prior sentences. A defendant receives three points for each "prior sentence of imprisonment" exceeding thirteen months, § 4A1.1(a); two points for each "prior sentence of imprisonment of at least sixty days not counted in subsection (a), § 4A1.1(b); and one point for each "prior sentence" not counted in subsections (a) or (b), § 4A1.1(c). Section 4A1.1 uses the terms "sentence of imprisonment" and "prior sentence" differently. For one thing, § 4A1.1(a) and (b) assign points based on a prior "sentence of imprisonment," whereas § 4A1.1(c) assigns points based on a "prior sentence." More revealing, though, is that Part A provides separate definitions for "prior sentence" and "sentence of imprisonment." *See* § 4A1.2.

Thus, if Chatmon would receive criminal-history points for his 1999 Georgia conviction as a "sentence of imprisonment" under § 4A1.1(a) or (b) or as a "prior sentence" under § 4A1.1(c), then that conviction also counts as a predicate offense for career-offender purposes.

### a. "Sentence of Imprisonment" (§ 4A1.1(a) & (b))

We first consider the meaning of "sentence of imprisonment." Both Chatmon and the government agree that only a sentence for a which a defendant actually serves time counts as a "sentence of imprisonment."[2] But the district court held that "all that matters is the sentence imposed" and that "the length of time served is irrelevant."

#### i. "[M]ust have actually served a period of imprisonment"

Part A indicates that "sentence of imprisonment" "means a sentence of incarceration and refers to the maximum sentence imposed." § 4A1.2(b)(1). Additionally, to count, a sentence of imprisonment must have either "been imposed within fifteen years of the defendant's commencement of the instant offense" or have "resulted in the defendant being incarcerated during any part of such fifteen-year period." § 4A1.2(e)(1). The application notes state an additional requirement: "To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence . . . ." § 4A1.2 cmt. n.2. This provision is unambiguous. A sentenced imposed—but one for which the defendant does not serve time, perhaps because of suspension or stay—does not count as a "sentence of imprisonment" for criminal-history purposes, under §§ 4A1.1(a), (b), and thus also does not count for career-offender purposes. The government agrees as much.[3]

The district court, however, determined that it is irrelevant whether a defendant actually serves time on a "sentence of imprisonment." It relied on subsection § 4A1.2(b)(1), which

---

[2] At sentencing, Assistant United States Attorney Christopher D. Poole was candid with the court in stating: "I, quite frankly, agree with [defense counsel's] legal analysis on that issue."

[3] As Mr. Poole candidly acknowledged, "I was aware of that application note, and I do think it's an issue, which is why I argued that [Chatmon] had actually served a sentence of imprisonment on the robbery cases . . . . [My] concern was that this would have to be an actual term of imprisonment, which is what the judgment says it is, four years' imprisonment, in order for that sentence to be counted."

provides that a "sentence of imprisonment" "refers to the maximum sentence imposed." That is true, but that is not, as the district court found, "all that matters." Application Note 2 clarifies and narrows the definition; it is not the case, as the district court found, that "the language of the guideline trumps the application note."

Application Note 2 discusses what constitutes a "sentence of imprisonment." The first sentence states: "To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence . . . ." § 4A1.2 cmt. n.2. The Note then states: "For purposes of applying §4A1.1(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum . . . . That is, criminal history points are based on the sentence pronounced, not the length of time actually served." § 4A1.2 cmt. n.2.

Although the Note could better harmonize these three sentences, the first sentence would seem to control the determination of whether a sentence constitutes a "sentence of imprisonment" at all. The second and third sentences, in contrast, would seem to address how to determine the *length* of a sentence of imprisonment—a step subsequent to determining that a sentence even qualifies as a "sentence of imprisonment." The length of a "sentence of imprisonment" is relevant because it determines whether a defendant receives 3 criminal-history points under § 4A1.1(a) or 2 criminal-history points under § 4A1.1(b).[4] Before determining the *length* of a sentence of imprisonment, however, a court must determine whether a sentence even qualifies as a "sentence of imprisonment." And as explained above, and as the government agrees, the Guidelines Manual unambiguously states that "[t]o qualify as a sentence of

---

[4] The second and third sentences would seem important in a situation in which a defendant is sentenced to a term of imprisonment not to exceed five years but only serves one year. In that case, the defendant would receive three criminal-history points under § 4A1.1(a) for a sentence exceeding thirteen months—not two criminal-history points under § 4A1.1(b) for a sentence of at least sixty days.

8

imprisonment, the defendant must have actually served a period of imprisonment on such sentence." § 4A1.2 cmt. n.2.

Binding circuit precedent also compels this approach. We have previously held that a "sentence of imprisonment" requires that a defendant actually serve time. *See Hall*, 531 F.3d at 419–20. At issue in *Hall* were a defendant's two prior misdemeanor convictions, for which the defendant "was given full credit for time served on earlier unrelated offenses"—or as this court framed the issue, "whether time 'actually served' includes time previously served." *Id.* at 416, 418. The defendant argued that these two convictions should not qualify as a sentence of imprisonment for the purposes of assigning criminal-history points. *See id.* at 416. We held that "a defendant who receives full credit for time served on an entirely separate conviction does not in fact 'actually serve' any time for the offense in question." *Id.* at 419. As we said, "[i]mposing a prison sentence without requiring that any time be actually served, in other words is empty rhetoric for the purposes of the federal Sentencing Guidelines." *Ibid.*

We revisited the issue in *United States v. Tutt*, 432 F. App'x 469 (6th Cir. 2011). There, Tutt, at his 2007 sentencing for a check-counterfeiting scheme, received criminal-history points for a 2005 bank-fraud conviction for which Tutt was sentenced to "time served plus five years of supervised release." *Id.* at 470–71. Subsequently, Tutt violated the conditions of his supervised release and received a sentence of 18 months. *Ibid.* Under these circumstances, the sentencing court added the 18-month term of imprisonment to Tutt's 2005 sentence of time served, and it consequently assessed criminal-history points for the conviction. *Ibid.* This was proper because, as we said, a sentencing court must add a term of imprisonment imposed upon revocation of supervised release to the original sentence imposed. *Ibid.* (citing § 4A1.2(k)(1)).

9

In *Tutt*, we distinguished *Hall* on the ground that it involved time-served sentences in misdemeanor cases, rather than felony cases. *Ibid.* Because § 4A1.2(c) provides that "[s]entences for all felony offenses are counted," we determined that Tutt's 2005 bank-fraud conviction "still counts" even though it "did not involve a term of imprisonment." *Ibid.* Although *Hall* and *Tutt* are not directly contradictory, these cases stand in tension. *Tutt*, unlike *Hall*, was an unpublished, non-binding decision. We now clarify that the fact that *Hall* involved misdemeanor convictions is a distinction without a difference. Nothing in *Hall* indicates that its reasoning should be limited to misdemeanor convictions. We affirm that the Guidelines unambiguously state that a "sentence of imprisonment" requires that a defendant "actually serv[e] a period of imprisonment on such sentence," § 4A1.2 cmt. n.2—without differentiating between misdemeanor and felony sentences.

Because we determined that Tutt's 2005 bank-fraud conviction was properly counted in light of the actual term of imprisonment imposed upon revocation, our statement that the felony status of Hunt's 2005 conviction was sufficient to count the conviction was essentially dicta. It is true that § 4A1.2(c) says that "[s]entences for all felony offenses are counted." But in *Tutt*, we quoted this provision out of context. In the context of § 4A1.2, subsection (c) clearly speaks to what *kinds* of offenses count. Section 4A1.2(c) means that all felony offenses are *eligible* to be counted. Section 4A1.2's other subsections unambiguously impose *additional* requirements on whether to count an offense. For example, § 4A1.2(d) instructs that sentences imposed for offenses committed prior to the defendant's eighteenth birthday, not resulting from an adult conviction, are generally excluded; § 4A1.2(e) instructs that sentences imposed outside certain time frames are excluded; and § 4A1.2(h) instructs that sentences from foreign convictions are excluded. Absent the term of imprisonment imposed upon revocation, would we have counted

10

Tutt's original 2005 sentence if it resulted from a juvenile conviction committed thirty years ago in France? Of course not—even though it was felony offense. So too a "sentence of imprisonment" must satisfy § 4A1.2(b)'s definition of that term, as clarified by Application Note 2. Although the government agreed with Chatmon's reading of *Hall* and *Tutt*,[5] the district court's confusion on this point is understandable. As we explain below, however, a defendant may still receive criminal-history points under § 4A1.1(c) for a sentence for which no time is actually served; but that sentence is not a "sentence of imprisonment," and so no criminal-history points may be assigned *pursuant to § 4A1.1(a) or (b)*.

## ii. Chatmon's Case

The parties dispute whether Chatmon actually served a period of imprisonment on the 1999 Georgia conviction. Chatmon's chief argument is that he "served no time for the [Georgia] robbery conviction." Appellant Br. 6. At sentencing, the government contended that Chatmon "was in custody for a week" while awaiting sentence and that this constituted time served.

Chatmon's presentence report indicates that his 1999 Georgia conviction resulted in a "total term of 4 years, with credit for time served in Case No. 95CR17604." The reference to "95CR17604" is to *another* Georgia sentence, imposed in 1996, for which Chatmon was paroled on August 30, 1999. Eight days later, on September 7, 1999, Chatmon was convicted of robbery[6] and received his sentence of 4 years "with credit for time served" in the earlier case. The government contends that Chatmon remained in custody after being paroled on August 30 but before his conviction on September 7.

---

[5] Mr. Poole candidly acknowledged to the court that he was "familiar with the *Tutt* case" but did not rely on it for his argument because he did not feel it was relevant. His position that a defendant must actually serve time was based "upon [his] reading of the *Tutt* case," and his agreement with Chatmon's legal analysis was based on his "reading of *Hall* and *Tutt* and the guidelines."

[6] To be clear, it is this robbery conviction that we refer to as the "1999 Georgia conviction."

11

We said in *Hall* that "[c]ommon sense dictates that time served awaiting trial for the offense in question, and *not* time served for a wholly separate offense, should be considered time 'actually served' under the Guidelines . . . ." *Hall*, 531 F.3d at 419. The government argues that Chatmon served one week in custody awaiting disposition of the robbery offense and that this counts as "time served" on his 1999 conviction. At sentencing, Chatmon argued that he did not serve another day in jail after being paroled on August 30, 1999. "Cold reality informs us that a defendant who receives full credit for time served on an entirely separate conviction does not in fact 'actually serve' any time for the offense in question." *Hall*, 531 F.3d at 419. Thus, whether Chatmon's 1999 conviction counts as a "sentence of imprisonment" turns on 1) whether he was, in fact, in custody for the one week between his parole date and conviction date and also on, 2) if he was in custody, whether that one week would count as time served on the 1999 Georgia conviction under the circumstances.

Chatmon entered into the record various documents as evidence in support of his position. First, Chatmon's online profile from the Georgia Department of Corrections lists his "actual release date" as August 30, 1999 and his "incarceration end" date as the same. Second, Chatmon's discharge order from the state pardon board lists August 30, 1999 as his parole date. A county sheriff's report shows that immediately after Chatmon was paroled, he was rearrested at the state prison and transported to the sheriff's department. Eight days later, on September 7, 1999, Chatmon pleaded guilty to the robbery conviction. That same day, the state court entered its judgment, sentencing Chatmon to "four (4) years with credit for time served in 95CR17604." Two months later, the county sheriff's department signed an affidavit as "part of the official record of the trial" that indicated that "[t]he defendant spent a total of 0 days in jail . . . prior to date sentence was imposed."

12

Chatmon relies on this evidence to argue that after being paroled, he did not spend additional time in jail. At sentencing, he highlighted that his jail-credit sheet for the robbery offense indicated that he served zero days in jail prior to the date the sentence was imposed.[7] Additionally, Chatmon also emphasized that the judgment in his 1999 robbery conviction specifically awarded him "credit for time served *in Case No. 95CR17604*" (emphasis added)—not for time served awaiting conviction for the robbery offense.

The government, in turn, disputed Chatmon's assertion that he was not in custody after receiving parole. At sentencing, the government argued that "the defendant . . . was in custody on the robbery case until he pled on September 7th." It pointed to no evidence in the record to support this. The prosecutor argued that the jail-credit sheet, indicating zero days served in jail, was "just an error" because "[Chatmon,] clearly, was in custody for a week." On appeal, however, the government's principal argument is not that Chatmon's 1999 conviction qualifies because he was in custody;[8] rather, the government addresses this issue in only one sentence in a footnote: "Because the defendant was released on parole for his other offense on August 30, but remained in custody for the robbery until September 7, he served at least one week in custody for the robbery." Appellee Br. 9 n.1.

We offer one final observation on Chatmon's 1999 jail-credit sheet. As noted, the document indicates that Chatmon spent zero days in jail prior to the imposition of his sentence. In addition, the lieutenant who completed the sheriff's department's custodian affidavit

---

[7] Interestingly, defense counsel also appeared to concede, at times, that Chatmon actually spent the week in custody. At one point, he stated: "[T]he uncertainity here – well, what happened to the seven days that he was in custody? And we don't know." We are unsure what counsel meant.

[8] Rather, the government's chief argument on appeal is that Chatmon's 1999 conviction qualifies as a "prior sentence" because Chatmon's 1999 sentence was imposed within ten years of the commencement of the present offense. *See* Appellee Br. 8.

handwrote the following in the "comments" section: "in jail 05-29-96 out to DC 02-18-97 / in from Lee State Prison 05-22-97 out 06-12-97 / in 08-31-97 [sic[9]] out 09-07-99." The reference to "out 09-07-99" may be the basis for the government's belief that Chatmon remained in custody following his parole.

Because the district court applied an incorrect definition of "sentence of imprisonment," it did not determine whether Chatmon actually was in custody and if so, whether that time counts as time served. After the court ruled, Chatmon expressly asked the district court if it were ruling about whether Chatmon served a sentence of imprisonment. The district court stated that it "has no way of determining that." The parties did not have a full opportunity to offer evidence on the issue, and we decline to assess the factual record in the first instance. On remand, the district court should allow the parties to offer evidence and to develop arguments on the issue. "The government bears the burden of proof with regard to the various penalties it seeks to have imposed under the sentencing guidelines." *United States v. Cowart*, 90 F.3d 154, 159 (6th Cir. 1996). If the district court again determines that there is insufficient evidence to conclude that Chatmon served time on the 1999 conviction, then the government will not have met its burden and the conviction cannot serve as a "sentence of imprisonment" for either criminal-history or career-offender purposes. We remand to allow the district court to address this issue.

### b. "Prior Sentence" (§ 4A1.1(c))

As explained above, a sentence counts as a predicate conviction for career-offender purposes if it would be counted separately for criminal-history purposes under Part A of Chapter 4. *See* § 4B1.2(c). Subsection 4A1.1(c) assigns criminal-history points not for a prior "sentence

---

[9] Based on Chatmon's online Corrections Department profile, the discharge order, and the sheriff's report, it appears that Chatmon was rearrested and transported to the sheriff's department on August 30, 1999—not "08-31-97."

14

of imprisonment" but for a "prior sentence." If Chatmon's 1999 Georgia conviction qualifies as a "prior sentence" under § 4A1.1(c), then the conviction could still count as a predicate offense.

Part A defines "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." § 4A1.2(a)(1). Thankfully, the Guidelines are clear that a defendant need not actually serve time for a "prior conviction" to count. They provide that "[a] conviction for which the imposition of sentence was totally suspended or stayed shall be counted as a prior sentence under §4A1.1(c)." § 4A1.2(a)(3). As with "sentence of imprisonment," however, there is a time-period constraint. To count as a "prior sentence," a sentence must have been imposed "within ten years of the defendant's commencement of the instant offense." § 4A1.2(e)(2); *see* § 4A1.1 cmt. n.3. That is, any sentence within ten years (that meets § 4A1.2's other requirements) counts.

Even if Chatmon prevails with respect to whether his 1999 Georgia conviction was a "sentence of imprisonment," he must also prevail on the timeframe issue in order to avoid counting the sentence as a predicate offense. Here, Chatmon's Georgia robbery sentence was imposed on September 7, 1999. The parties, however, contest when Chatmon's instant offense commenced.

On appeal, the government's principal argument is that the cocaine conspiracy began "in or about September 2009" and was, therefore, within the ten-year window. *See* Appellee Br. 8. The government cites Chatmon's indictment, but it offered no evidence at the sentencing hearing regarding the commencement of the offense. In the district court's colloquy at sentencing, it did not make an express finding as to the date Chatmon's instant offense commenced. But the district court did expressly find that the presentence report—which determined that the instant

offense commenced on January 21, 2010, the date of the first overt act—correctly stated the facts.[10] The government had a chance to object to the presentence report, and it did not do so. This appeal is not the first time that the offense-commencement date has been addressed. The initial version of Chatmon's presentence report appears to have suggested that the offense commenced prior to January 21, 2010. Chatmon objected, asserting that the first overt act occurred on January 21, 2010. The probation officer agreed, noting that "[Chatmon] is correct and the Presentence Report has been revised accordingly." Even after the issue of the offense-commencement date was flagged, the government did not object. Thus, this does not appear to be a case in which the government is blindsided by an argument on appeal that it did not have an opportunity to address below.

Further, Chatmon's plea agreement, which the prosecutor signed, lists January 21, 2010 as the earliest date. On appeal, the government cites the plea agreement as evidence that the drug conspiracy began "in or about September 2009," but the plea agreement does not appear to support that proposition.[11]

Nonetheless, the government may not have anticipated the significance that the offense-commencement date would play at sentencing. The parties should be allowed to offer evidence as to the time of the commencement of offense. We remand to allow the government, if it chooses, to introduce evidence that Chatmon's instant offense commenced on or before September 7, 2009, and so that the district court may address the issue in the first instance.

---

[10] Even if the government's assertion—that the instant offense commenced "in or about September 2009"—is correct, it will not have met its burden. The government would need to establish that Chatmon's instant offense commenced on or prior to September 7, 2009.

[11] The plea agreement does, however state: "[These facts] do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case."

16

## 2. The Two 2003 Tennessee Cocaine Convictions

Twice in 2003, Chatmon was convicted in Tennessee state court of cocaine possession. At sentencing, he argued that the two convictions should only count as a single predicate offense for career-offender purposes. His counsel stated:

> We believe that those cases were merged at the front end, they were merged at the time of sentencing, that since that time period the indictments have been merged *nunc pro tunc* to just make explicit what was already very clear, that those cases were merged, that the indictments were merged and the cases were consolidated for sentencing. And we're prepared to put on proof of state court procedures as it relates to indictments, docket numbers, judgments, and other things that I think would be significant to the Court and to the court of appeals as well.

The Guidelines provide seemingly clear instructions on whether to count related convictions separately or as a single sentence. Section 4A1.2 provides:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

§ 4A1.2(a)(2). According to the presentence report, Chatmon committed the first offense on August 9, 2001, committed the second offense on December 13, and *then* was arrested for the first offense on December 14. Because Chatmon was not arrested for the first offense prior to committing the second offense, there was no "intervening arrest." Nonetheless, the presentence report maintains that the sentences for the two convictions resulted from separate indictments. Additionally, the presentence report also maintains that Chatmon was sentenced for the first conviction on March 4, 2003, and for the second conviction on March 14; these sentences appear to be imposed on different days. At first blush, it would appear that Chatmon's two Tennessee cocaine-possession convictions count separately under § 4A1.2(a)(2).

17

But the matter is not so simple. Chatmon filed a sentencing memorandum in which he argued that the two Tennessee convictions were consolidated per state-court rules. He also argued that the two Tennessee convictions would unquestionably have been treated as a single sentence under an older version of the Guidelines Manual. Before Amendment 709 to the Guidelines Manual became effective in 2007, § 4A1.2(a)(2) provided an alternative method to determine whether to count offenses separately or as a single transaction. Under the old Guidelines Manual, "Prior Sentences imposed in related cases are to be treated as one sentence for purposes of §4A1.1(a), (b), and (c)." § 4A1.2(a)(2) (2006). Application Note 3 clarified that "prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." § 4A1.2 cmt. n.3 (2006).

Chatmon offers strong evidence that the two Tennessee convictions were consolidated. Most notably, Chatmon submits a nunc pro tunc order from Hamilton County Criminal Court, where the two convictions originated, that consolidates the two indictments for sentencing. But after Amendment 709 to the Guidelines Manual, whether prior sentences are consolidated is no longer dispositive in determining whether those offenses should be counted separately or as a single offense. *See* U.S.S.G. app. C, amend. 709 (2013). Amendment 709 replaced the old test with a new one, under which a court looks to whether the prior sentences resulted from offenses in the same charging instrument or whether the sentences were imposed the same day.[12] § 4A1.2(a)(2). The amendment was intended to "simplif[y] the rules for counting multiple

---

[12] Additionally, Amendment 709 altered the method of determining which misdemeanors and petty offenses are eligible to be counted in a defendant's criminal-history score. *See* app. C, amend. 709.

sentences and [to] promot[e] consistency in the application of the guideline." App. C, amend. 709.

The ordinary situation is that a defendant sentenced under the old version of § 4A1.2(a)(2) seeks a sentence reduction because he would have been better off under the *new version* of § 4A1.2(a)(2), as modified by Amendment 709. *See, e.g.*, *United States v Hunter.*, 427 F. App'x 469, 472 (6th Cir. 2011); *United States v. Atkinson*, 427 F. App'x 420, 421–23 (6th Cir. 2011); *United States v. Horn*, 612 F.3d 524 (6th Cir. 2010); *United States v. Curb*, 625 F.3d 968, 971–72 (6th Cir. 2010); *United States v. Goodloe*, 388 F. App'x 500, 506–07 (6th Cir. 2010); *United States v. Gibbs*, 626 F.3d 344, 351–52 (6th Cir. 2010); *United States v. Vassar*, 346 F. App'x 17, 28 (6th Cir. 2009). That argument is futile for defendants because the Sentencing Commission did not make Amendment 709 retroactive, and the amendment may not be applied retroactively. *Horn*, 612 F.3d at 527.

Here, however, Chatmon suggests the opposite: that he would have been better off under the *old version* of § 4A1.2(a)(2) and its accompanying Application Note 3. This is not the first time a defendant has advanced such an argument. *See United States v. Rogers*, 347 F. App'x 218, 219–21 (6th Cir. 2009). A defendant may not obtain relief based on "language . . . stricken from the Guidelines prior to his sentencing." *Id.* at 219. That is, a defendant may not rely on the "superseded 'related cases' language from [the] earlier version of the Guidelines." *Id.* at 220.

Chatmon's argument, though, is of a different hue: he argues that his Tennessee convictions should be counted as a single offense under the *current* version of the Guidelines because they result from offenses *effectively* contained in the same charging instrument and *effectively* imposed on the same day. He submits the affidavit of the Hamilton County prosecutor responsible for both of Chatmon's 2003 cases. The prosecutor states that both

offenses were to be incorporated into a single plea agreement and that "it was of no consequence that there were two plea agreements, two Judges, and two plea dates, as all cases were consolidated in the first plea agreement." He also states that the plea agreement, as to both convictions, was effectively entered on March 4, 2003, and that the second plea agreement was filed on a separate date simply as a matter of procedure. He states that he negotiated this arrangement with Chatmon's attorney "with federal consequences in mind."

As evidence that the two 2003 convictions were effectively imposed on the same day, Chatmon submits a nunc pro tunc order from Hamilton County Criminal Court consolidating the indictments for sentencing. The order states that "consolidation of these indictments may be a significant issue if this defendant is sentenced in a Federal venue." Indeed it has proven to be. That order was signed by Chatmon's Hamilton County prosecutor. The order was entered nunc pro tunc. "When an order is signed 'nunc pro tunc' as of a specified date, it means that a thing is now done which should have been done on the specified date." Black's Law Dictionary 1100 (8th ed. 2004) (quoting 35 C.J.S. Federal Civil Procedure § 370, at 556 (1960)).

A nunc pro tunc order does not necessarily operate as a get-out-of-jail-free card for a defendant. In the immigration context, for instance, an alien may not escape removal by vacating a prior conviction with a nunc pro tunc order entered solely for rehabilitative or immigration purposes. *Boar v. Holder*, 475 F. App'x 615, 619 (6th Cir. 2012).

We previously addressed the applicability of a nunc pro tunc consolidation order for criminal-history purposes in *United States v. Williams*, 238 F.3d 426, 2000 WL 1872059 (6th Cir. 2000) (unpublished table opinion), another case involving multiple convictions from Tennessee state court. In *Williams*, the defendant submitted a motion and proposed nunc pro tunc order to the Honorable Joe Brown, Shelby County Criminal Court, consolidating ten prior

20

aggravated burglary convictions. *See ibid.* Judge Brown granted the motion and entered the order. *See ibid.* At the defendant's subsequent federal sentencing, the defendant argued that the nunc pro tunc consolidation order meant that his prior convictions were consolidated. The district court declined to give effect to the order because defense counsel "had resorted to duplicitous and potentially unethical means to convince Judge Brown to grant the order." We identified five non-dispositive factors that our court had previously looked at to assess the significance of a state-court consolidation order:

> (1) [whether] the order . . . indicate[s] that it was to have nunc pro tunc effect; (2) [whether] the order was apparently obtained in an ex parte proceeding, [i.e., whether] there was no indication in the record that the state prosecutor's office had agreed to the terms of the consolidation motion; (3) [whether] the order was drafted by defense counsel and presented to the judge for signature without additional background information concerning the defendant; (4) [whether] defense counsel candidly conceded that the purpose of the consolidation order was to assist his client in obtaining a reduced federal sentence; and, (5) [whether] sentence consolidation['s goal] . . . of providing defendants with enhanced opportunities for rehabilitation . . . would . . . [be] served, [notwithstanding that] defendant had already served his state court sentences.

*Ibid.* In *Williams*, Judge Brown's order was entered nunc pro tunc. But central to the panel's decision not to give effect to the order was the fact that "it was obtained without notice to or consent from the appropriate Tennessee state prosecutor and without first providing Judge Brown with information concerning the purpose of the order." *Ibid.* In obtaining the consolidation order, defense counsel "never disclosed [its] purpose to Judge Brown, either orally or in writing." *Id.* n.1. Defense counsel, in fact, never "disclose[d] to the district court until questioned the manner in which he had obtained the consolidation order from Judge Brown." *Ibid.*

Additionally, in *United States v. Odom*, 199 F.3d 321 (6th Cir. 1999), we held that the district court correctly discounted a state court's consolidation order for these reasons: the order

21

*did not* state it was entered nunc pro tunc; there was no indication that the state prosecutor agreed to the order's terms; there was nothing to indicate what background information, if any, was provided to the judge; and defense counsel admitted that the order was obtained solely to help the defendant. *Id.* at 324.

Chatmon's case differs from *Williams* and *Odom* in several aspects. First, as noted above, a different version of § 4A1.2 is now in effect. Second, unlike in *Williams* and *Odom*, the appropriate state prosecutor consented to and signed the consolidation order.[13] Third, Chatmon's counsel made clear to the state-court judge the purpose of the consolidation order, and that purpose is stated squarely in the order itself. In *Williams*, an unpublished opinion, we "emphasized . . . that our decision in no way establishes a *per se* rule against use of after-the-fact consolidation orders as evidence of relatedness." *Id.* n.10. At any rate, Chatmon's argument is not that his two 2003 convictions were consolidated *because of* the nunc pro order—but merely that the order evinces that "the parties explicitly understood these cases to be joined and incorporated and pled and sentences on the same day."

The district court declined to rule on Chatmon's objection to counting the 2003 convictions separately, finding that its decision regarding the 1999 Georgia conviction rendered the issue moot. Although there is some evidence in the record on point, the parties have not had an opportunity to development arguments. Chatmon himself contends that the issue should be decided by the district court in the first instance on remand. *See* Appellant Br. 7 n.3. Accordingly, we remand to the district court to address this issue in the first instance.[14]

---

[13] Not only did the prosecutor *consent* to the consolidation order, he specifically attested that he did so in order to document his intentions at the time of Chatmon's 2003 plea and "to memorialize the consolidation which existed at the time of the plea."

[14] The district court's rulings on the 1999 Georgia conviction may again render moot the need to decide this issue.

B. Substantive Reasonableness

On appeal, Chatmon argues that his sentence was substantively unreasonable because the district court over-emphasized his criminal history and imposed a sentence at the top end of the § 5A sentencing range without justification. *See* Appellant Br. 7–9. Because we find it necessary to remand for resentencing, we do not address this argument.

IV

The district court erred in finding that Chatmon's 1999 Georgia robbery conviction can serve as a predicate offense for career-offender purposes without first determining whether Chatmon actually served time on that conviction. Additionally, the district court did not have an opportunity to decide whether Chatmon's two Tennessee convictions count as a single sentence for career-offender purposes. We remand to the district court to address these issues.

The presentence report indicates that Chatmon's total offense level, absent career-offender status, is 15. If the 1999 Georgia conviction is time-barred and if the two Tennessee convictions are counted as a single offense, Chatmon's criminal-history score would appear to drop from 15 to 9, which would place him in criminal-history category IV. An offense level of 15 and a criminal-history category of IV corresponds to a § 5A sentencing range of 30–37 months.[15]

---

[15] Section 4A1.1(e) instructs a sentencing court to add 1 criminal-history point for each conviction of a crime of violence that did not receive points as a "sentence of imprisonment" or as a "prior sentence" because the conviction was counted as part of a single sentence. This provision would appear not to apply to Chatmon because his two Tennessee convictions were not for a "crime of violence." § 4A1.1(e).

We, therefore, VACATE the district court's sentence and REMAND for resentencing consistent with this opinion.[16]

---

[16] We note that the guidelines remain advisory. Even if the district court determines on remand that Chatmon lacks the predicate offenses to qualify as a career offender, the district court retains discretion to impose an appropriate sentence. The Guidelines Manual specifically contemplates that there may be situations in which "[c]ounting multiple prior sentences as a single sentence may result in a criminal history score that underrepresents the seriousness of the defendant's criminal history . . . . In such a case, an upward departure may be warranted." § 4A1.2 cmt. n.3. Choosing a proper sentence remains within the discretion of the sentencing court.